BRYAN, Judge.
Linda McKnight (“Linda”), a resident of Pickens County, died testate on May 11, 2006. Item Two of Linda’s will left all of her property to her three children, Drew Smithart (“Drew”), William Walker Way (“William”), and Alexander Spiller Way (“Alex”):
“ITEM TWO
“I give, devise, and bequeath all of my property, real, personal or mixed, of every kind and description, wherever located, to my children, Drew Smithart, William Way and Alex Way. The proper *812 ty (including real estate and all furnishings and contents) designated as 13593 Riverbend Road, Moundville, AL 35474, located in Tuscaloosa County shall be owned by my sons as joint tenants with right of survivorship. Drew Smithart is to have all jewelry and furniture that was given to me by him or his father. This includes a diamond engagement ring in unusual setting, a diamond cross necklace, a yellow gold diamond teardrop necklace and plain diamond earrings to match, a solid pearl necklace, matching earrings with gold jackets, one pearl and one jade enhancer, a solid gold large ring, and diamond loop earrings. He also gets my fur coat and his truck. William and Alex shall share the rest of my jewelry, furniture and personal effects, equally. I LOVE YOU ALL. YOU HAVE BEEN THE LIGHTS, JOYS AND LOVES OF MY LIFE. I WILL SEE YOU IN HEAVEN. I hope I have provided for your needs and ask you to spend your money and use your hearts wisely. My sons are already given the manufactured house owned by myself and located at 994 Clear Creek Road, Gordo, AL, 35466 as tenants in common. They may move it or live in it where it stands or sell it.”
(Capitalization in original.)
Item Five of Linda’s will prohibited her former husbands, Bill Smithart and Jack Way (“Jack”), from having possession or control of any property belonging to Drew, William, or Alex that they had acquired through Linda, her sister, or her parents:
“ITEM FIVE
“I name as guardian of the person and as conservator and/or trustee of the estate of each child of mine Helen McKnight, my mother, and Drew Smit-hart, my son, presently of Pickens County, Alabama, or if he/she for any reason fails or ceases to act as such guardian or conservator, then the other shall act alone. No bond or other security shall be required of a conservator, guardian or trustee acting under this Will or on behalf of any life insurance or IRA beneficiaries. It is my intention by the appointment of a guardian of the person that such guardian shall have custody of the person of the minor children. It is my desire that my named guardians and custodians immediately get a custody order for all my children upon my death. Upon each child reaching 18, it is my desire that each such child shall be relieved of any disabilities of non-age and shall be emancipated, guardian of their own person, and conservator of their own money.
“Anybody who contests this will shall receive nothing. Neither [Bill Smit-hart] nor Jack [Way] is to ever have possession or control of any items or funds from life insurance, IRAs, this will or other method of acquisition belonging to my children and acquired by, through or under myself, my sister, or my parents. This is based not on spite, for I loved them both; but upon their proven criminal track records with money (even if one of them remains uncon-victed). I wish I could say it more delicately, but I cannot. They are not to touch one penny of Drew’s, William’s or Alex’s assets.”
(Emphasis added.)
The Probate Court of Pickens County admitted Linda’s will to probate and issued letters testamentary to Helen McKnight (“Helen”), Linda’s mother. The probate court also appointed Helen conservator of the estates of William and Alex.
William, who was Jack’s son, died on September 24, 2006, at the age of 15. The Probate Court of Tuscaloosa County opened a decedent’s estate for William and issued letters of administration to Tusca *813 loosa Memorial Chapel, Inc. (“the Chapel”), William’s largest creditor. Although the record before us is not complete, Jack apparently asserted that Helen, as William’s conservator, was obligated to transfer the property in William’s conservator-ship estate to Jack on the ground that it had vested in Jack by virtue of the statute governing intestate succession. Although her petition is not in the record before us, Helen apparently petitioned the Probate Court of Pickens County to determine that the property in William’s conservatorship estate should be transferred to Linda’s estate so that it could be divided between Drew and Alex. Following a hearing, the Probate Court of Pickens County entered a judgment determining that Jack was entitled to the property in William’s conser-vatorship estate by virtue of the law of intestate succession. That judgment stated:
“This cause was before the court for hearing on the conservator’s Petition to Determine Distribution of the Estate. Helen McKnight is the conservator of the subject estate and the maternal grandmother of William Walker Way.
“Present in the courtroom were the conservator and her attorney the Hon. J. Paul Whitehurst, and the Hon. Thomas R. Jones, Jr., the attorney representing Jack Way who is the father and sole heir at law of William Walker Way. William Walker Way was 15 at the time of his death and therefore lacked legal capacity to make a will. The conservator’s petition at paragraph 3, page 1, acknowledges that Jack Way is William’s only heir at law pursuant to Alabama’s law of intestate succession. Code of Alabama 1975, § 43-8^2.
“The attorneys made opening and closing arguments to the court. Ms. McKnight testified on direct examination of her attorney and cross-examination of Mr. Jones. No other witnesses were called by either side.
“The assets comprising the subject conservatorship estate devolved substantially from the estate of Linda McKnight, the mother of William Walker Way who preceded her son in death. The conservatorship was established to receive and conserve the assets obtaining to William Walker Way from his mother’s estate, his separate estate and proceeds of a life insurance policy. Linda McKnight and Jack Way were divorced several years prior to Linda’s death. It is clear in Linda’s will that she did not want Jack Way to benefit from her estate, either directly or indirectly. However, pro-vision is not made in the will for disposition of the assets received from her estate by William Walker Way upon his death.
“The conservator is now asking the court to construe Linda McKnight’s will to read that her intent, as expressed in the will, was to restrict the transferred property to the children so that Jack Way could not benefit from the transfer upon the death of one of his children. In other words, the court should now order a renunciation of the property received from Linda’s estate by the con-servatorship thereby returning the property to Linda’s estate so that her two surviving sons would then share equally in William’s share. The court, however, must apply the law of Alabama’s intestate succession statute because the assets obtaining to William Walker Way from his mother’s estate vested in him by operation of law at the moment of Linda’s death. Code of Alabama 1975, § 43-8-42.
“The section of the statute applicable to the instant issue is found at § 43-8-42(2) which directs that in the event of no surviving issue, the intestate’s estate shall devolve in toto to the surviving *814 parent or parents. Such is the case here. William Walker Way had no surviving spouse or issue at the time of his death and was survived by his father, Jack Way. The conservatorship estate is within the jurisdiction of this court and shall be distributed under this ORDER as below directed.
“IT IS THEREFORE THE ORDER OF THE COURT that:
“1. The conservator of the William Walker Way conservatorship case number 6735 now pending in the Probate Court for Pickens County, Alabama, shall within 80 days from the date hereof petition the court for a final settlement of the subject conservatorship estate and upon a hearing shall submit her final account for all receipts and disbursements.
“2. Upon the court’s entry of order approving the conservator’s account and final settlement of the conservatorship, the assets thereof shall be transferred from this court to the Tuscaloosa County Probate Court for administration and distribution under the estate case of William Walker Way now pending before that court.”
(Capitalization in original.) Helen, in her capacities as William’s and Alex’s conservator and as Linda’s executor, then appealed from that judgment to the Pickens Circuit Court (“the circuit court”).
The Chapel appeared in Helen’s appeal in the circuit court and moved the circuit court to compel Helen to file a final settlement of William’s conservatorship estate and, upon approval of that final settlement, to order Helen to transfer William’s property to the decedent’s estate established for William by the Probate Court of Tuscaloosa County. The Peoples Bank & Trust Company (“the Bank”), a judgment creditor of Jack’s, filed a motion seeking leave to intervene in Helen’s appeal and requesting that the circuit court compel Helen to file a bond as required by an earlier order of the Probate Court of Pickens County. The record before us does not indicate whether the circuit court ruled on that motion.
Following a hearing, the circuit court entered a judgment affirming the judgment of the Pickens County Probate Court. The circuit court’s judgment stated:
“This action is before the Court on the Appeal of Helen McKnight, Conservator of the Estates of William Walker Way and Alexander Spiller Way, and Executor of the Estate of Linda McKnight deceased, from the Order entered by the Probate Court of Pickens County, Alabama, on the Petition to Determine Distribution which was entered by the Probate Court on February 22, 2007. The parties, except Jack Way, appeared by counsel and the Court proceeded to consider the record, briefs and arguments of counsel.
“Bad facts make bad law. The facts in this case go beyond bad to heartbreaking. This Judge was fortunate to have had Linda McKnight practice law in his court. She was a lawyer’s lawyer, completely ethical and honest and fought hard for her clients. Ms. McKnight had a great sense of humor and the uncanny ability to communicate with people from all walks of life.
“The only thing more important to Ms. McKnight than her profession was her family. She loved her children, took great pride in their accomplishments and found humor in their ‘life experiences.’
“As a consummate lawyer, Ms. McKnight believed in the rule of law. This Court takes no pleasure in this ruling but, just as Ms. McKnight was, is *815 bound by the rule of law and must deny this appeal.
“IT IS ORDERED, ADJUDGED AND DECREED that the appeal of Appellant] Helen McKnight, Conservator of the Estates of William Walker Way and Alexander Spiller Way and Executor of the Estate of Linda McKnight, deceased, is denied and this Court does hereby affirm and adopt the Order on Petition to Determine Distribution entered by the Probate Court for Pickens County, Alabama, on February 22, 2007.”
(Capitalization in original.)
Helen then timely appealed to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
Helen argues that we must reverse the judgment of the circuit court because, she says, the language in Item Five of Linda’s will stating that “[n]either [Bill Smithart] nor Jack [Way] is to ever have possession or control of any items or funds from life insurance, IRAs, this will or other method of acquisition belonging to my children and acquired by, through or under myself, my sister, or my parents” (“the Item Five language placing a restriction on Jack”) constitutes a valid and enforceable restriction on the alienation of her property to Jack and that Linda’s will, considered as a whole, indicates that she intended her gift to her children in Item Two to be contingent upon their dying under circumstances in which possession or control of property her children had received from her, her sister, or her parents would not pass to Jack.
 When the resolution of an appeal turns on the construction of a will, we apply a de novo standard of review. See Harrison v. Morrow, 977 So.2d 457, 459 (Ala.2007).
“ ‘The law in Alabama regarding the interpretation of wills is well settled:
“ ‘ “[T]he intention of the testatrix is the law of the will, which the court should consider as a whole, giving effect to each provision where it is possible to do so; it is the court’s duty to carry out the testatrix’s intention where that intent can be ascertained. To determine the intent of a testator or testatrix, the court must look to the four corners of the instrument, and if the language is unambiguous and clearly expresses the testator’s or testatrix’s intent, then that language must govern. Galin v. Johnson, 457 So.2d 359 (Ala.1984). Where a will contains ambiguous or doubtful expressions, it is the duty of the court to determine what the testator or testatrix intended. Brittain v. Ingram, 282 Ala. 158, 209 So.2d 658 (1968).” ’
“Barnett v. Estate of Anderson, 966 So.2d 915, 918 (Ala.2007). ‘A document is unambiguous if only one reasonable meaning emerges.’ Kershaw v. Kershaw, 848 So.2d [942] at 951 [ (Ala. 2002) ].”
Scholl v. Stacy, 981 So.2d 1116, 1120 (Ala.2007).
We conclude from a careful review of the language of Linda’s will as a whole that, with the exception of William’s interest in the “property (including real estate and all furnishings and contents) designated as 13593 Riverbend Road, Moundville, AL 35474, located in Tuscaloosa County” (“the Riverbend Road property”), which her will gave to Drew, William, and Alex “as joint tenants with right of survivorship,” Linda intended to make a gift of an absolute fee interest in her property to Drew, William, and Alex. We further conclude that Linda did not intend the *816 Item Five language placing a restriction on Jack to add a contingency to the gift of her property to her children as provided in Item Two or to provide for the disposition of her children’s property upon their deaths. Rather, we conclude from the fact that the Item Five language placing a restriction on Jack stated that he was never to have possession or control of property belonging to her children, which would occur if he was ever appointed as a conservator or trustee for her children, and from the fact that the Item Five language placing a restriction on Jack immediately follows the language of Item Five nominating Helen and Drew to serve as conservators and trustees for William and Alex that Linda intended the Item Five language placing a restriction on Jack to prevent him from being appointed as a conservator or trustee for Drew, William, or Alex. Accordingly, aside from William’s interest in the Riverbend Road property, which passed to Drew and Alex by virtue of their rights of survivorship, the disposition of William’s property upon his death was governed by the intestate-succession statutes. In pertinent part, § 43-8-42, Ala. Code 1975, provides:
“The part of the intestate estate not passing to the surviving spouse under section 43-8-41, [Ala.Code 1975,] or the entire intestate estate if there is no surviving spouse, passes as follows:
“(1) To the issue of the decedent; if they are all of the same degree of kinship to the decedent they take equally, but if of unequal degree, then those of more remote degree take by representation;
“(2) If there is no surviving issue, to his parent or parents equally.... ”
(Emphasis added.) Because William did not have a spouse or issue when he died, his property, other than his interest in the Riverbend Road property, passed to Jack upon William’s death. Accordingly, we affirm the judgment of the circuit court.[1]
AFFIRMED.
*817 THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. Helen also argues in her reply brief that we should strike the brief filed with this court by the Chapel and the Bank. We will treat her argument as a motion to strike their brief. As grounds, Helen asserts that the Chapel and the Bank lack standing to oppose her appeal. First,, we note that, because Jack was a party to the action in the Probate Court of Pickens County and was a party to Helen's appeal to the circuit court, Helen's challenge to the standing of the Chapel and the Bank does not constitute a challenge to the jurisdiction of the Probate Court of Pickens County, the circuit court, or this court. Second, we note that Helen has not argued to us that the circuit court erred in allowing the Chapel and the Bank to participate in the appeal in the circuit court and that, therefore, Helen has waived that issue on appeal. See Tucker v. Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319 (Ala.2003) (“ 'When an appellant fails to properly argue an issue, that issue is waived and will not be considered. Boshell v. Keith, 418 So.2d 89 (Ala.1982).’ Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ. App.1996).”). Third, we note that Helen named the Chapel and the Bank as appellees in her notice of appeal to the supreme court. Fourth, we note that, even if the Chapel and the Bank lacked standing as appellees, we could consider their brief as the brief of amici curiae. See Rule 29, Ala. R.App. P. Accordingly, we deny Helen's motion to strike the brief of the Chapel and the Bank.
Helen also argues in her reply brief that we should strike Jack's letter adopting the brief filed with this court by the Chapel and the Bank. We will treat that argument as a motion to strike Jack's letter. As grounds, Helen argues that Jack did not present the arguments contained in that brief to the circuit court. However, although we cannot reverse a lower court’s judgment on the basis of an argument that was not presented to the lower court, we can, subject to exceptions not applicable here, affirm a lower court's judgment on the basis of an argument that was not presented to it.
"[Tjhis Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected,